[No. 1398-3.   Division Three.   June 29, 1976.]

F. STUART FOSTER, ET AL, *Respondents*, v. RONALD L. NEHLS, ET AL, *Appellants*.

*Douglas A. Wilson* and *Wilson & Flower*, for appellants.

*Walter G. Meyer, Jr.,* and *Halverson, Applegate, McDonald, Bond, Grahn, Wiehl, Almon & Putney,* for respondents.

McINTURFF, C.J.—This is an action to enforce a restrictive covenant. The covenant provides:

> No structures shall be erected, altered, placed, or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed *one and one-half stories in height* and a private garage for not more than two cars.

(Italics ours.)

Prior to construction of his home, Mr. Nehls was advised by his neighbors on several occasions that they believed his planned home to be in violation of the above restrictive covenant governing construction in their hillside subdivision. Nevertheless, the Nehlses proceeded with construction. Hence, this action for injunctive relief was begun by the neighbors as foundation forms were being built, but before any concrete was poured. They alleged the new home would substantially obstruct their view, in violation of the restrictive covenant.

The Nehlses completed construction before the trial court found the second story of the home to be in violation of the restrictive covenant and ordered the second story removed. This appeal followed.

The trial court declined to define "one and one-half stories in height" by an inches and feet measurement, but found the restrictive covenant to prohibit construction of any residence which substantially obstructs the view in question. On appeal, we understand the Nehlses to contend that the trial court's finding of an obstruction, without also giving an inches and feet definition of "one and one-half stories in height," is inadequate to find a violation of the restrictive covenant.

■■ Intent of the parties controls in the interpretation of a restrictive covenant. Intent is a question of fact, to be discovered by reference to the instrument in its entirety and the manifest meaning of language used by the parties.[1]

---

[1]*Burton v. Douglas County*, 65 Wn.2d 619, 621-22, 399 P.2d 68 (1965); *Gwinn v. Cleaver*, 56 Wn.2d 612, 615, 354 P.2d 913 (1960); *Holmes Harbor Water Co. v. Page*, 8 Wn. App. 600, 604, 508 P.2d 628 (1973); *Bersos v. Cape George Colony Club*, 4 Wn. App. 663, 665, 484 P.2d 485 (1971).

Doubtful intent must be resolved in favor of the free use of land. Ambiguous intent is to be clarified by reference to the instrument, together with all surrounding facts and circumstances. Ambiguity exists in the present case by the use of a floor-space description common in the construction and real estate business[2] ("one and one-half stories") to describe a height restriction ("one and one-half stories in height"). Therefore, the court properly considered additional testimony in determining the intent of the parties.

The court found upon substantial evidence that the restrictive covenant prohibits the construction of any residence which substantially obstructs the view enjoyed by other residents of the subdivision.[3] Testimony by witnesses supports this finding that it was not the intent of the parties to reduce the height restriction to an inches and feet definition, but to protect the view enjoyed by other neighbors regardless of the actual height of the obstructing buildings. For example, it was the testimony of Elmer L. Hovde, an original platter and developer of the subdivision, that the purpose of the restrictive covenant "was to not obstruct any views from any house." According to Mr.

---

[2] Testimony of Newell Pock, chief building inspector for the City of Yakima, states: "One and a half stories in normal nomenclature is utilizing the second story or the half of the upper deck as a liveable unit. Not an attic storage area but a liveable habitable space. Where the second story, if you would call it that, is half of the area it is a story and a half."

John G. Fairbrook, a contractor and real estate broker, stated that one and one-half stories in height was a term commonly used in the construction industry that "one and a half story in architectural style would be a house that has the second living area generally a portion percentage of the main floor area . . ." He also agreed that the term involved architectural design rather than height of a building.

[3] At trial, the court entered the following findings of fact: Finding of fact No. 4: "Said covenant is a covenant which is in common usage, especially in Yakima County, and it was *clearly intended to protect the view* of persons owning view lots in Sunrise Addition . . ." Finding of fact No. 9: "At the time that plaintiff, Longmire purchased Lots 7 and 8, . . . a house would not be constructed on Lot 5, Block 1 in such a manner as the house was constructed by defendants Nehls and *in such a manner as to substantially obstruct the view* of said parties Longmire." (Italics ours.)

Hovde, the actual height of houses in the subdivision varies with the lay of the land, with a flat area below the hillside allowing higher construction without obstructing the view enjoyed by neighbors above. The finding of the court being supported by substantial evidence, that finding will not be disturbed on appeal.

Testimony and photographs in evidence also support the finding that the neighbors' view was substantially obstructed by the Nehls home. That finding supports the conclusion entered by the court that the Nehls home is in violation of the restrictive covenant.

The Nehlses further object to the court's personal view of the premises, which they argue the court erroneously relied upon as evidence to justify its findings and conclusions of a violation of the restrictive covenant. We agree with the Nehlses that "a view of the premises is for the purpose of better understanding the evidence admitted, and not for the purpose of taking evidence."[4] However, in its memorandum opinion, the court makes clear that its view was used for no other purpose than to understand matters already in evidence. The court writes:

> The court viewed the property, the home in question, together with plaintiffs' homes and the general area contained in the Sunrise Addition to the Selah. While the pictures in evidence make obvious the inconsistency of defendant's home compared with the other homes pictured, there is always a difference in perspective when viewed objectively from all angles. In this case, however, I feel the pictures are not only good representation of the areas portrayed but also accurate in perspective. . . . The view by the court also confirms that the defendant's home, while an attractive addition to the subdivision, is unlike, due to the design, any other home in Sunrise Addition. The outstanding difference is its height.

The Nehlses' argument concerning misuse of the court's view of the premises is not well taken.

The Nehlses also argue an absence of evidence to support the court's finding that money damages are inade-

---

[4] *Riblet v. Ideal Cement Co.*, 54 Wn.2d 779, 785, 345 P.2d 173 (1959).

quate to compensate the neighbors for their obstructed view. However, there is substantial evidence that the neighbors will lose a great portion of their view and full enjoyment of their property in the absence of injunctive relief. We agree with the trial court that land is generally considered a unique commodity which cannot be adequately replaced by money.[5] Therefore, equity should intervene in this case to restore the land and its full enjoyment to the rightful owner.[6] We conclude the court committed no error in finding money damages an inadequate remedy in the present case.

The Nehlses next argue the court abused its discretion in ordering removal of the second story even though the neighbors had not filed a lis pendens in their action against the Nehlses. It is contended that failure by the neighbors to file a lis pendens denied notice of the action to the Nehlses' mortgagee; that the ordered removal decreased the value of the Nehls property, thereby reducing the value of the mortgagee's security without an opportunity in the mortgagee to defend; and that this harsh result makes the ordered removal inequitable and improper. We disagree.

A lis pendens is notice of the pendency of "an action affecting the title to real property".[7] The present action is to enforce a restrictive covenant, which has no effect on title, thus a lis pendens is unnecessary. The court did not abuse its discretion.

Finally, the Nehlses assign error to denial of their motion for reconsideration. It is contended that the court erred in refusing to weigh the relative equities of the present case, and thereby abused its discretion in ordering removal of the second story. However, the doctrine of bal-

---

[5] *See* Restatement of Contracts § 360, comment *a* at 643 (1932), which states:

The remedy in money damages for breach of a contract for the transfer of a specific tract of land is regarded as inadequate without regard to quantity, quality, or location. A specific tract is unique and impossible of duplication by the use of any amount of money.

[6] *See Sheldon v. Hallis*, 72 Wn.2d 993, 997, 435 P.2d 988 (1967).

[7] RCW 4.28.320.

ancing of equities or relative hardship is available only to an innocent party who proceeds without knowledge or warning that he is acting contrary to another's vested property interest.[8] The Nehlses did knowingly continue in the face of on-going legal action and, according to Mr. Nehls himself, "assumed the risk" of the outcome, making a balancing of the equities unavailable to them. The court did not err in refusing to reconsider the ordered removal of the second story.

We have considered the Nehlses' remaining assignments of error and find them to be without merit.

Judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied August 18, 1976.

Review denied by Supreme Court January 25, 1977.

---

[8]*Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 485, 513 P.2d 36 (1973); *Bach v. Sarich*, 74 Wn.2d 575, 582, 445 P.2d 648 (1968); *Mahon v. Haas*, 2 Wn. App. 560, 468 P.2d 713 (1970); *see Holmes Harbor Water Co. v. Page*, 8 Wn. App. 600, 603, 508 P.2d 628 (1973).