977 P.2d 878

Francis A. HINER, James Dukes, Gladys Hollmann, and Pacific Palisades Community Association, Plaintiffs–Appellees,

v.

Michael J. HOFFMAN, Minako Suzuki aka Minako S. Hoffman, Spada Builders, John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, and Doe Governmental Entities 1–10, Defendants–Appellants

No. 21408.

Supreme Court of Hawai'i.

May 18, 1999.

Rodney Uchida, Honolulu, on the briefs, for defendants-appellants, Michael J. Hoffman and Minako S. Hoffman.

Michael A. Lilly and R. Laree McGuire, Honolulu, on the briefs, for plaintiffs-appellees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

Defendants-appellants Michael J. Hoffman and Minako Suzuki, also known as Minako S. Hoffman [hereinafter, collectively, the Hoffmans], appeal from the circuit court's order granting the motion for summary judgment brought by plaintiffs-appellees Frances A. Hiner, James Dukes, Gladys Hollman, and Pacific Palisades Community Association [hereinafter, collectively, the plaintiffs-appellees] and denying the Hoffmans' cross-motion for summary judgment. The central issue on appeal is the interpretation of language in a 1966 restrictive covenant running with the Hoffmans' land. The covenant, the undisputed purpose and intent of which is to restrict the height of a home built on the property, prohibits dwellings that are more than "two stories *in height.*" (Emphasis added.) The Hoffmans, having built a three-story home, essentially argue that the covenant is ambiguous because it provides no indication as to the allowable height of each story.

Because we agree that the failure to define the measurable height of a "story" renders the restrictive covenant ambiguous, we hold that the covenant is unenforceable against the Hoffmans. We therefore vacate the circuit court's order granting plaintiffs-appellees' motion for summary judgment and denying the Hoffmans' cross-motion for summary judgment. We also remand this case with instructions to the circuit court to enter summary judgment in favor of the Hoffmans.

## I. BACKGROUND

The Hoffmans own a lot in the Pacific Palisades neighborhood of Pearl City, in the City and County of Honolulu. Dukes and Hollman own a lot on the mauka side of the Hoffmans' lot. Hiner owns a lot adjacent to Dukes and Hollman's lot. The Pacific Palisades Community Association is the neighborhood homeowner's association.

The Hoffmans' lot, as well as 118 other lots in the community, is subject to a restrictive covenant filed in 1966 [hereinafter, 1966 covenant or covenant]. The covenant provides in relevant part:

> No *dwelling shall be erected, altered, placed or permitted to remain* on any lot other than one detached single family dwelling, which contains a floor area, exclusive of open porches, garages and carports, of less than 800 feet, and *which exceeds two stories in height.*

(Emphases added.) It is undisputed that the covenant does not prescribe, in feet or by some other numerical measure, the maximum "height" of a "story."

The Hoffmans purchased their lot in 1988. The Hoffmans' lot slopes steeply down a hillside. In January 1993, the Hoffmans submitted a permit application for the construction of a three-story residence designed to follow the downhill grade of their lot in a staggered, terrace-like form. The city Building Department approved the application, and the Hoffmans built the house as planned. The third story of the house partially blocks the makai view from the lot owned by Dukes and Hollman.

During the framing stage of construction in the fall of 1994, the Hoffmans received warnings from neighbors and the community association that their planned three-story house violated the terms of the 1966 covenant. At about the same time, on November 10, 1994, Hiner, Dukes, and Hollman filed a complaint against the Hoffmans, seeking, *inter alia,* a declaratory judgment that the Hoffman home violated the covenant. Thereafter, the community association filed a motion to intervene, which the circuit court granted.

The plaintiffs-appellees moved for a temporary restraining order on November 15, 1994. On December 20, 1994, the circuit court denied the plaintiffs-appellees' request for a temporary restraining order, and, thereafter, the Hoffmans continued building their home.

On May 28, 1996, the plaintiffs-appellees filed a motion for summary judgment based on the language of the 1966 covenant. On

July 16, 1996, the Hoffmans filed a cross-motion for summary judgment. On September 9, 1996, the circuit court determined that "the [Hoffmans] have constructed and are maintaining a three-story residence in violation of a 1966 restrictive covenant ... [that,] on its face, is not ambiguous." Therefore, the circuit court issued an order granting plaintiffs-appellees' motion for summary judgment and denying the Hoffmans' cross-motion for summary judgment. The circuit court also issued a "mandatory injunction ... order[ing] and direct[ing the Hoffmans] to remove the third (top) story of their dwelling." Thereafter, on September 19, 1996, the Hoffmans filed a motion for reconsideration, which the circuit court denied on November 16, 1996.

The Hoffmans timely appealed.

## II. *STANDARD OF REVIEW*

■ "The preliminary question of whether a covenant is ambiguous is a question of law that may be resolved on summary judgment." *Pelosi v. Wailea Ranch Estates,* 10 Haw.App. 424, 436, 876 P.2d 1320, 1327 (citation omitted), *reconsideration denied,* 10 Haw.App. 631, 879 P.2d 591, *cert. denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994). On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Therefore,

> [s]ummary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Richard v. Metcalf,* 82 Hawai'i 249, 252, 921 P.2d 169, 172 (1996) (citation omitted). Insofar as the Hoffmans and plaintiffs-appellees agree on the language and purpose of the covenant at issue, this case presents a pure question of law, *i.e.,* whether the covenant's language is ambiguous, and, if so, the effect such ambiguity has on the circuit court's mandatory injunction.

## III. *DISCUSSION*

■ On appeal, the Hoffmans argue that the circuit court erred by (1) failing to give effect to the term "height" in its interpretation of the 1966 covenant and (2) concluding that the covenant is not ambiguous on its face. In response, the plaintiffs-appellees contend that the circuit court properly granted their motion for summary judgment because the Hoffmans had actual and constructive knowledge of the height restriction prior to purchasing their lot and building the house. The plaintiffs-appellees argue, therefore, that the circuit court's mandatory injunction requiring removal of the third story of the Hoffmans' home was proper.

■ We agree with the Hoffmans that, under the circumstances of this case, the language of the 1966 covenant is ambiguous on its face and, therefore, that the circuit court erroneously issued the mandatory injunction. As this court has previously noted, "[w]hen construing a restrictive covenant, the parties' intentions are normally determined from the language of the deed." *Waikiki Malia Hotel, Inc. v. Kinkai Properties Ltd. Partnership,* 75 Haw. 370, 384, 862 P.2d 1048, 1057 (1993) (citation omitted) (Concluding that there was an ambiguity as to the intended beneficiary of a forty-five-foot height restriction, the court examined the geographical location of the lands and the physical condition of the structures thereon to resolve that ambiguity.). Moreover, "[s]ubstantial doubt or ambiguity is *resolved against the person seeking its enforcement.*" *Id.* (citations omitted) (emphasis added). As previously stated, the 1966 covenant at issue provides that "[n]o dwelling shall be erected, altered, placed or permitted to remain ... *which exceeds two stories in height.*" (Emphasis added.) On superficial reading, each term in the phrase "two stories in height" *seems* unambiguous. However, when these terms are read together and in light of the undisputed purpose of limiting the actual height of homes, the phrase is, in fact, ambiguous as applied to the Hoffmans' home because it does not establish an enforceable height restriction. *Cf. Midkiff v. Castle & Cooke, Inc.,* 45 Haw. 409, 421, 368 P.2d 887, 894 (1962) ("An ambiguity may arise from

words plain in themselves but uncertain when applied to the subject matter of the instrument.")

Although we generally begin our analysis of restrictive covenants with reference to the language used, we note that the parties are in absolute agreement as to the "purpose" of the covenant at issue. As the plaintiffs-appellees unequivocally state in their answering brief:

> [*The Hoffmans*] *admitted below and [the plaintiffs-appellees] agreed and still do agree* that: 1) the *"clear purpose" of the covenant "is to limit the height of the homes in the neighborhood* and on Lot 29–B [the Hoffmans' Lot]"; 2) "[t]he pertinent language of the Declaration of Covenants is 'two stories in height'"; and 3) "[t]he logical interpretation of these words is that Lewers & Cooke's *intent* as the Developer *was to restrict the height of the homes within the neighborhood.*"

(Emphases added.)

Thus, all parties agree that the purpose of the covenant is to establish concrete height restrictions. Such emphasis on "height" implies that the object of the covenant was to protect view planes. Indeed, in a warning letter to the Hoffmans, the Pacific Palisades Community Association expressed its concern that the breaking of the "two stories in height" covenant *"will affect everyone who owns a home along the ridge line* [because, i]f one is allowed, soon there will be many others being built."[1] (Emphasis added.) Clearly, the protection of view planes of homeowners "along the ridge line" was the Association's chief concern.

Nevertheless, the drafter of the 1966 covenant, Lewers and Cooke, chose ambiguous and ineffectual language to restrict the height of homes in the neighborhood. Specifically, the 1966 Declarations, which contain the restrictive covenant at issue, fail to provide a definition or concrete dimensions for the term "story." The failure of the 1966 covenant to prescribe, in feet or by some other numerical measure, the maximum "height" of a "story" renders the language of the covenant ambiguous. As the Hoffmans point out, without such a definition, the "height restriction" of which the plaintiffs-appellees speak is meaningless. Thus, the Hoffmans argue that under the language of the 1966 covenant:

> [a] two-story house, with each story being 25 feet tall, would be in compliance with the covenant, [whereas, a] three-story house, with each story being only 10 feet tall would violate the covenant[;] ... [y]et, the three-story house would have an overall height of only 30 feet while the two-story house would be 50 feet in height.

Although every house must comply with the relevant land use ordinances and building codes, the Hoffmans' example illustrates the ambiguity of the phrase "two stories *in height.*" (Emphasis added.)

We note that the dissent's observation that "the bottom floor of the Hoffmans' house constituted a separate story," *dissent* at 197, 977 P.2d at 887, does *not* make the Hoffmans' house "three stories *in height*" as the dissent contends. *See id.* at 197, 977 P.2d at 887 (emphasis added). Where, as here, the covenant utterly fails to provide any dimensions for the term "story," there is simply no way to know whether the Hoffmans' three-story structure exceeded "two stories *in height.*" The dissent attempts to avoid this problem by *assuming* that which it hopes to prove, as if, by declaring the house to be "three stories," that declaration provides a measurable and enforceable limit to the "height" of each "story." Neither the dissent

---

1. We reject the dissent's hyperbolic statement that "one hundred or more homeowners in the Pacific Palisades community have limited their own property rights in reliance that their neighbors will duly reciprocate." *Dissent* at 199, 977 P.2d at 889. First, the record is void of any *evidence* of other homeowners' actions with regard to the 1966 covenant, and the circuit court did not, in its summary judgment order, enter any finding of fact with regard to other homeowners. Thus, we reject the dissent's inference from the fact that there are "118 lots in the Pacific Palisades neighborhood." *Dissent* at 199, 977 P.2d at 889 n. 6. Second, and more fundamentally, even if evidence of other homeowners' "reliance" had been adduced, such self-imposed limitations in the absence of a legal challenge to the actual language in the covenant would have been irrelevant to the present proceedings. Surely, the dissent would not contend that this court is *bound* by the thoroughly hypothetical interpretation that non-parties to the present action *could* have given to the phrase "two stories in height."

nor the plaintiffs-appellees seem able to explain what the "measure" of a "story" is and certainly not with reference to any terms in the covenant. The ultimate ambiguity and ineffectiveness of the covenant is laid bare by the fact that, had the circuit court ordered the Hoffmans to remove the two middle floors, as opposed to the top floor, of their home, there would be no dispute that the house would conform to the "two stories in height" restriction. Therefore, where the height of a two-story residence could equal or exceed the height of the Hoffmans' three-story residence, the language "two stories in height" is inherently ambiguous, particularly where the parties agree that the purpose of the covenant is to restrict the height of homes in the neighborhood in order to protect view planes.

Notwithstanding the fact that the Hoffmans, in their application for a building permit, listed "3" as the number of stories for their residence, the Hoffmans point out that their home does not violate the height requirements established by the Revised Ordinances of Honolulu 1990 (ROH), which contains the Land Use Ordinance (LUO) and Uniform Building Code (UBC). The plaintiffs-appellees conceded as much in their motion for summary judgment when they stated that "it is undisputed that [the Hoffmans'] three-story structure does not violate any state or county land use laws or zoning ordinances."[2] Indeed, no one argues that the ROH precludes the building of a two-story structure that would stand as tall as the Hoffmans' three-story residence. In particular, the UBC defines the *minimum* height requirements of a "story," but does not specify a maximum height restriction for that term. Thus, the UBC defines a "story" as

> that portion of a building included between the upper surface of any floor and the upper surface of the floor next above[ ].... If the finished floor level directly above a usable or unused under-floor space is more than 6 feet above grade as defined herein for more than 50 percent of the total perimeter or is more than 12 feet above grade as defined herein at any point, such usable or unused under-floor space shall be considered a story.

Uniform Building Code, 1991 Edition, § 420 [adopted by ROH § 16–1.1(a) (1994) ].[3] Inasmuch as nothing in this definition of "story" precludes a three-story structure from being shorter than a two-story structure, the fact that the Hoffmans' home is comprised of three stories does *not* make it greater than "two stories *in height.*"

In response to the Hoffmans' contention that their residence complies with the height requirements for two-story buildings in the ROH, the plaintiffs-appellees contend that "restrictive covenants can be *more* restrictive than the Building Code." (Emphasis added.) Although this is undoubtedly true as a general proposition, this argument rests on the faulty assumption—shared by the dissent—that the covenant at issue is clear and unambiguous.[4] In the present case, however, the circuit court ignored the "in height" language contained in the covenant and focused, instead, on the fact that the Hoffmans "constructed and are maintaining a three story dwelling" that violated a "two-story covenant." In determining that the phrase "two stories in height" is ineffectual and ambiguous as a "height" limitation, we do *not* imply that language in a covenant restricting homes to "two stories" is always ambiguous. If the purpose of the covenant was to preserve a two-story aesthetic character for the neighborhood, rather than to protect view planes, and if the covenant merely restricted all homes to "two stories," without adding

2. The plaintiffs-appellees' expert, architect Jim Reinhardt, noted in an affidavit attached to the motion for summary judgment that the Hoffmans' property is zoned R–5, which is residential. According to the affidavit, "[t]he height limit for R–5 is a sloping plane 30' above grade which existed prior to the construction of the residence." *See also* 2 ROH § 21–5.40–2(b) & Table 21–5.8–B.

3. We take judicial notice of the ROH because "Rule 202(b), Hawaii Rules of Evidence (HRE) (1985), requires the courts to take judicial notice of all duly enacted ordinances." *State v. Vallejo,* 9 Haw.App. 73, 823 P.2d 154, 158 (1992).

4. For the same reason, the plaintiffs-appellees' claim that the Hoffmans "purchased their lot with full knowledge of covenants, conditions and restrictions" on their property does not resolve the core issue here because the parties dispute the meaning of the covenant at issue, which is itself ambiguous.

the "in height" language, we might concur with the circuit court's analysis. However, where the purpose of a covenant is to restrict the "height" of homes, the indeterminate "two story" language, in our view, is not only ineffectual to achieve that purpose but ambiguous when applied to the case at bar.[5]

The dissent attacks as "unworkable" the approach by which we examine the language of the covenant in light of its undisputed purpose. Specifically, the dissent complains that "[the majority opinion's approach] denies homeowners and purchasers the ability to rely on the plain language of covenants, requiring them to seek out evidence of drafters' intent." *Dissent* at 198, 977 P.2d at 888. First, we note that the dissent's criticism rests *entirely* on the premise that there is *no* ambiguity in the language "two stories in height." If we agreed with this fundamental point, the remaining disagreements would evaporate. However, we reject the dissent's approach, which focuses entirely on the fact that "three stories" is greater than "two stories," and thereby implies that covenants will be enforced as long as the structure violates a mere *portion* of the language in a restrictive covenant. Unlike that of the dissent, our approach does not treat any part of the language as surplusage to be ignored out of unsubstantiated fears about "uncertainty, litigation, opportunistic non-compliance, and 'un-neighborly' relations." *Dissent* at 198, 977 P.2d at 888. Second, contrary to the dissent's criticism, today's decision will not require future litigants to seek out evidence of intent even where the language is plain. Today's decision merely reinforces this court's long-standing policies favoring (1) careful drafting of covenants in order to re-duce uncertainty and litigation and (2) unrestricted use of property where, as here, the language of a covenant *is* ambiguous. *See infra* at 195, 977 P.2d at 885.

Courts from other jurisdictions have similarly concluded that language such as that found in the covenant here is ambiguous. *See, e.g., Foster v. Nehls*, 15 Wash.App. 749, 551 P.2d 768, 771 (1976) ("Ambiguity exists in the present case by the use of a floor-space description common in the construction and real estate business ('one and one-half stories') to describe a height restriction ('one and one-half stories in height')." [6] (Footnote omitted.)); *Metius v. Julio*, 27 Md.App. 491, 342 A.2d 348, 353 (1975) ("We are persuaded that the meaning of the express 'three stories in height' used in this particular equitable restriction, is ambiguous."); *Johnson v. Linton*, 491 S.W.2d 189, 196–97 (Tex.Civ.App. 1973) (concluding that phrase "one and one-half stor[ies] in height" is ambiguous because it is "reasonably susceptible to more than one meaning"). To the extent that other courts have found such language to be unambiguous, or sufficiently clear to support injunctive relief, we do not find them persuasive. *See, e.g., Dickstein v. Williams*, 93 Nev. 605, 571 P.2d 1169, 1171 (1977) (upholding trial judge's determination that "one story from ground level" is not ambiguous); *Pool v. Denbeck*, 196 Neb. 27, 241 N.W.2d 503, 506 (1976) (concluding, without analysis, that "[c]ovenant No. 6 limiting the height of structures to two stories is not ambiguous"); *King v. Kugler*, 197 Cal.App.2d 651, 17 Cal.Rptr. 504, 507 (1961) ("we see nothing vague, ambiguous or uncertain in the meaning of the restrictive phrase 'one story in height' ").

---

**5.** The dissent attacks our "aesthetics" versus "enforceable height" distinction as "spurious" because there might be cases where two-and three-story houses have the same "external appearance," thereby rendering the "two-story" language ambiguous. *See Dissent* at 198, 977 P.2d at 888 n. 5. The fact that two-story and three-story houses may have the same external appearance has *no* bearing on the clarity or ambiguity of the phrase "two stories"; either a structure *is* or it is *not* two stories. As we have repeatedly noted, however, the question here is not whether the Hoffmans' house exceeds "two stories," but whether it exceeds "two stories *in* height," a distinction that seemingly eludes the dissent.

**6.** With respect to the *Foster* decision, the dissent seems to be of two minds. On the one hand, the dissent seems to commend the *Foster* court for overcoming its conclusion that the language "one and one-half stories in height" is ambiguous, *see Foster*, 551 P.2d at 771; *Dissent* at 198, 977 P.2d at 888 n. 3, even though it did so only by looking to the "intent of the parties." On the other hand, the dissent attacks today's decision as "unworkable" because it will, in the dissent's view, require homeowners and purchasers "to seek out evidence of the drafters' intent." *Dissent* at 198, 977 P.2d at 888.

In suggesting that the 1966 covenant should have utilized an absolute height restriction (*e.g.*, in feet or by some other numerical measure), we are *not* saying that all covenants must conform to a specific formula. Our decision today merely requires drafters of covenants to use language that, in light of the purpose of the covenant, provides greater certainty and is more susceptible to uniform enforceability than that found in the 1966 covenant. For example, the restrictive covenant could have been worded to restrict the height of subsequently-built homes so as to protect the view planes of earlier-built homes. *See, e.g., Radney v. Clear Lake Forest Community Ass'n, Inc.*, 681 S.W.2d 191, 195 (Tex.Ct.App.1984) (upholding restriction requiring that garage and servants quarters "shall not exceed the main dwelling in height or number of stories"). In fact, in the instant case, the Hoffmans' home was also burdened by a 1988 Warranty Deed[7] that required the highest part of their home to be less than 45 inches above the grade at the rear foundation of the residence. This restriction was placed in the 1988 Warranty Deed to protect "the view from the 'family room' of the existing residence...." The plaintiffs-appellees' own expert, architect Jim Reinhardt, submitted an opinion that the Hoffmans' home did *not* violate the restrictive covenant in the 1988 Warranty Deed. A method of limiting height such as that taken in the 1988 Warranty Deed would, unlike the "two stories in height" language, be an unambiguous and effective way to protect view planes. Thus, even if the restrictive covenant did not contain an absolute height restriction in feet, there were other unambiguous and effective methods to achieve the purpose of limiting building height to protect view planes.

Finally, we note that the plaintiffs-appellees rely heavily upon two cases in support of their contention that the circuit court did not err. *See Pelosi v. Wailea Ranch Estates*, 10 Haw.App. 424, 876 P.2d 1320, *reconsideration denied*, 10 Haw.App. 631, 879 P.2d 591, *cert. denied*, 77 Hawai'i 373, 884 P.2d 1149 (1994); *Sandstrom v. Larsen*, 59 Haw. 491, 583 P.2d 971 (1978). Neither decision compels us to reach a different conclusion in the present case.

Plaintiffs-appellees' reliance upon the decision of the Intermediate Court of Appeals (ICA) in *Pelosi* is misplaced. That appeal involved the interpretation of a restrictive covenant precluding lots in a Maui subdivision from being used "except for residential purposes." Specifically, the relevant language of the covenant in *Pelosi* limited permissible structures to "single family dwelling[s] ... and any accessory buildings." The defendant owned a "houselot," on which he constructed a roadway and a tennis court to benefit residences in a completely different subdivision, which the plaintiffs claimed violated the restrictive covenant.

In its decision, the ICA noted both the purpose and express terms of the covenant. The purpose was "to [establish] and [insure] a sound and proper subdivision for *residential* purposes." *Id.* at 435, 876 P.2d at 1327 (brackets and emphasis in original). In light of this purpose, the court determined that the restriction on the *type* of structure was clear and unambiguous. Additionally, the covenants at issue in *Pelosi* clearly distinguished between "houselots," which were subject to the covenants, and "roadway parcels," which were not, thus indicating that roadways in the subdivision were intended to be constructed on parcels other than houselots. *See id.* The ICA held, therefore, that the circuit court erred in "concluding that a roadway and a tennis court ... were permissible under the covenant." *Id.* at 442, 876 P.2d at 1329. The ICA remanded the case to the circuit court to determine whether mandatory injunctive relief would be appropriate.[8]

---

7. Although the plaintiffs-appellees' initial complaint alleged that the Hoffmans violated the 1988 Warranty Deed, the plaintiffs-appellees abandoned that claim earlier in the litigation, and it is not before this court on appeal.

8. On remand, the circuit court determined that the defendants did not deliberately or intentionally violate, nor did they assume the risk of violating, the covenants at issue. As a result, the circuit court balanced the equities and concluded that "injunctive relief of removal of the road and/or tennis court" was not appropriate. On appeal, the ICA affirmed the circuit court's denial of mandatory injunctive relief requiring removal of the roadway, but concluded that the plaintiff was entitled to mandatory injunctive relief with respect to removal of the tennis court.

Unlike in *Pelosi*, the parties here agree that the purpose of the 1966 covenant is to limit the height of homes and, by implication, protect view planes. Moreover, in *Pelosi*, the drafter of the covenant chose to effect that purpose by limiting structures to "single family dwellings . . . and any accessory buildings." According to the ICA, in *Pelosi*, the tennis court and roadway could not possibly fall within the ambit of the covenant's language.

Here, by contrast, the Hoffmans did *not* build a roadway and tennis court on a "houselot" that was limited to "single family dwelling[s] . . . and any accessory buildings." Even as alleged, the Hoffmans' "violation" of the covenant is not as stark as the defendant's violation in *Pelosi*. Because the 1966 covenant did *not* define the measurable limits of a "story" in such a way as to preclude the building of an equally tall two-story structure where the Hoffmans built a "three-story" residence, it cannot be said that the Hoffmans' home was greater than "two stories *in height*."

The plaintiffs-appellees also rely heavily on this court's decision in *Sandstrom*, primarily for the proposition that courts need not balance the equities nor consider the relative hardships in determining whether to grant injunctive relief where a property owner deliberately and intentionally violates a restrictive covenant. *See id.* at 500–01, 583 P.2d at 978–79. In addition, the plaintiffs-appellees analogize *Sandstrom* to the present case because, in *Sandstrom*, "there was no dispute that appellants were aware, both actually and constructively, of [a] one-and-one-half story height restriction at the time they purchased their property[ ] . . ., [and][a]ppellants nevertheless proceeded with construction[.]" *Id.* at 499–500, 583 P.2d at 978.

Insofar as the plaintiffs-appellees believe that *Sandstrom* stands for the proposition that the "one-and-one-half stories in height" language in a covenant is always clear and unambiguous, their interpretation is too broad. As the *Sandstrom* court explicitly noted, *"no questions relating to any possible ambiguity of the phrase 'one-and-one-half stories in height' have been raised in this appeal." Id.* at 496, 583 P.2d at 976 (em-

phasis added). The issue before the *Sandstrom* court was whether the height restriction in the covenant was abandoned. Here, by contrast, the Hoffmans specifically challenge the "two stories in height" language, arguing that the circuit court erred by concluding that the covenant is not ambiguous on its face. Absent clear and unambiguous language defining "story" in a manner that effectuates the undisputed purpose of "limit[ing] the height of the homes in the neighborhood," this court will not rewrite the terms of the 1966 covenant nor interpret them in such a way as to incorporate a definite "height" below that of the Hoffmans' home.

■ As noted previously, established precedent requires this court to resolve substantial doubts or ambiguity in restrictive covenants *against* the person seeking enforcement. *See Waikiki Malia Hotel*, 75 Haw. at 385, 862 P.2d at 1058. Put another way, "[t]he prevailing rule is that restrictive covenants are to be liberally construed in favor of the grantee[.]" *Collins v. Goetsch*, 59 Haw. 481, 485, 583 P.2d 353, 356–57 (1978). Courts strictly construe restrictive covenants in favor of the grantee to reinforce the policy favoring careful drafting of covenants and because "it is not too much to insist that [restrictive covenants] be carefully drafted to state exactly what is intended—no more and no less." *Waikiki Malia Hotel*, 75 Haw. at 387, 862 P.2d at 1059 (some brackets omitted) (quoting *Collins*, 59 Haw. at 485, 583 P.2d at 357).

■ Moreover, our decision today comports with the long-standing policy favoring the unrestricted use of property. Indeed, "[i]t is a well-settled rule that in construing deeds and instruments containing restrictions and prohibitions as to the use of property conveyed[,] all doubts should be resolved in favor of the free use thereof for lawful purposes in the hands of the owners of the fee." *In re Taxes of Johnson*, 44 Haw. 519, 538, 356 P.2d 1028, 1038 (1960) (citation and internal quotation marks omitted). "Of course, such 'free and unrestricted use of property' is favored only to the extent of applicable State land use and County zoning

*See Pelosi v. Wailea Ranch Estates*, No. 20254,     slip op. at 29, 1999 WL 62467 (Feb. 10, 1999).

regulations." *Collins,* 59 Haw. at 485 n. 2, 583 P.2d at 357 n. 2. Inasmuch as there is no dispute that the Hoffmans' home complies with such regulations, the law does not require the destruction of the third story of the Hoffmans' home, and we will not enforce the ambiguously-worded covenant against them.

Because we hold that, under the circumstances of this case, the terms of the 1966 covenant are ambiguous and unenforceable against the Hoffmans, we further hold that the circuit court erred when it issued its mandatory injunction ordering the Hoffmans to remove the top story of their home.

### IV. *CONCLUSION*

Because there is no genuine issue of material fact and the circuit court erroneously interpreted the language of the 1966 covenant, we vacate the circuit court's order granting plaintiffs-appellees' motion for summary judgment and denying the Hoffmans' cross-motion for summary judgment. We remand this case with instructions to the circuit court to enter summary judgment in favor of the Hoffmans.

Dissenting Opinion by NAKAYAMA, J., with whom RAMIL, J., Joins

I dissent. The language "two stories in height" is not ambiguous. Nevertheless, in order to spare what is undisputably a third story on the Hoffmans' home, the majority labors to create ambiguity where none existed before—certainly not in the perception of the Hoffmans' community, and apparently not in the Hoffmans until the present appeal. The majority thus saves one story of a single house, but betrays years of reliance by the Hoffmans' neighbors and the larger Pacific Palisades community on the covenant's plain language and increases uncertainty and litigation with respect to other plainly worded covenants.

As stated in *DeMund v. Lum,* 5 Haw.App. 336, 690 P.2d 1316 (1984):

*The fundamental rule in construing restrictive covenants is that the intention of the parties as shown by the covenant governs. . . . In construing the words of the covenant, the court is not limited to dictionary definitions, but the meaning of words used is governed by the intention of the parties, to be determined upon the same*

rules of evidence as other questions of intention. *The words are to be taken in their ordinary and popular sense,* unless they have acquired a peculiar or special meaning in the particular relation in which they appear or in respect of the particular subject matter, or unless it appears from the context that the parties intended to use them in a different sense.

*Id.* at 343, 690 P.2d at 1321 (quoting 20 Am.Jur.2d Covenants, § 186 (1965)) (emphasis added). *See also Clark v. Wodehouse,* 4 Haw.App. 507, 511, 669 P.2d 170, 173 (1983) ("In determining the meaning of the language used in a restrictive covenant, the court 'will first look to the plain, ordinary and popular meaning of the words used in the covenant.'" (citing *Collins v. Goetsch,* 59 Haw. 481, 487 n. 3, 583 P.2d 353, 358 n. 3 (1978))).

The phrase "stories in height" is an ordinary, stock expression. The plain reading of "[n]o dwelling shall be erected . . . which exceeds two stories in height," manifests the purpose of limiting structures to two stories or less—without regard or reference to exact "height" in feet and inches. It is undisputed that the Hoffmans' dwelling, built in a three-tiered, terrace-like form and described as "three-stories" by the Hoffmans themselves, is in fact three stories. One need not analyze any further or inquire into the height of the structure in feet and inches to determine that the Hoffmans' house strays from the common and conventional meaning of "two stories in height."

In *King v. Kugler,* 197 Cal.App.2d 651, 17 Cal.Rptr. 504 (1961), the California court of appeal rejected the identical argument advanced in the present appeal, holding that "one story in height" was unambiguous. The court reasoned:

*Contrary to appellant's claim, we see nothing vague, ambiguous or uncertain in the meaning of the restrictive phrase "one story in height," or as to what was intended thereby.* It does not appear, nor have appellants contended, that the words have a technical, special or peculiar meaning; they merely argue that to control the height the grantor "should" have inserted a limit in feet and inches or other language from which the intended maximum height

could have been inferred exactly.... [W]e can only conclude, as did the trial court, that the structure not to exceed "one story in height" neither encompasses nor contemplates defendants' proposed structure, which is to have a garage floor and ceiling and a room with a floor and ceiling above the garage.

Resorting to the popular and common meaning of the phrase "first class buildings only" as used in a like restriction, the court in *Harrison v. Frye*, 148 Cal.App.2d 626, 307 P.2d 76, held such language to be certain in its meaning and intent. *Similarly, we find the popular and common usage of the phrase "one story in height" to render the restriction sufficiently clear and certain to support injunctive relief.* The word "story" is defined in Webster's New International Dictionary, Second Edition (Unabridged) at page 2487, as "A set of rooms on the same floor or level; a floor, or the habitable space between two floors. * * * A story comprehends the distance from one floor to another." Commonly accepted as the ordinary meaning, this definition of the word "story" has been adopted by courts in and out of this jurisdiction....

In light of the restrictions and conditions contained in the Declaration, the topography of the tract and elevation of the lots, and the existing structures thereon, the general plan of the grantor reflects its plain intent and desire to maintain a one story height for *all* structures in the tract for the purpose of preserving the view of the individual lot owners at varied elevations. In accord with this plan, the grantor originally constructed no building outside of the restrictions, and today the structures, including garages and out buildings ... are all only one story high. *Appellants' illustrations of the "vagueness of the restrictions" ... are concededly extreme, the obvious result of strained constructions of an ordinary, common phrase, and we deem them to be unreasonable and of no validity in their argument. Id.* at 507–08 (emphasis added). *See also Dickstein v. Williams*, 93 Nev. 605, 571 P.2d 1169, 1170–71 (1977) (upholding the trial court's finding that "one story from ground level in height" was unambiguous); *Pool v. Denbeck*, 196 Neb. 27, 241 N.W.2d 503, 506 (1976) (holding, without discussion, that a "two stories in height" restriction is not ambiguous, and defendants' two-and-a-half story house "clearly violates it").

Nor does "two stories in height" become ambiguous under any technical definition of "story." The Hoffmans indeed argued before the circuit court that their house consisted of "two stories and a basement" under the definition of "story" in the Uniform Building Code (UBC). The plaintiffs, however, conclusively established that, even under the UBC definition, the bottom floor of the Hoffmans' house constituted a separate story, and the dwelling totaled three stories in height. Both the architect who designed the house and the Hoffmans' architectural expert at the hearing testified that the house was three stories under the UBC definition, and the original architect opined that it violated the instant covenant.

Only after the Hoffmans' argument based on the technical definition of "story" failed did the Hoffmans resort to the argument that the term "two stories in height" was ambiguous. This eleventh-hour change demonstrates that the "ambiguity" in this case stems less from bona fide doubt in the meaning of the covenant terms than from creative, if somewhat disingenuous, appellate advocacy. The majority nonetheless accepts the Hoffmans' argument, holding that, insofar as one could envision a hypothetical two story house identical in height, measured in feet and inches, to the Hoffmans' home, "two stories in height" is ambiguous. *See Majority* at 192, 977 P.2d at 882 ("Therefore, where the height of a two-story residence could equal or exceed the height of the Hoffmans' three story residence, the language 'two stories in height' is inherently ambiguous[.]").

I emphatically disagree. The academic possibility of such an identical house "in height" does not render the notice provided by the term "two stories in height" to prospective builders or purchasers (as opposed to those rationalizing in hindsight) any less clear. The Hoffmans admit as much by conceding that their house is in fact three stories. And the majority hardly proves other-

wise when it states that the covenant would be unambiguous if it, *inter alia,* "merely restricted all homes to 'two stories,' without adding the 'in height' language," *Majority* at 192, 977 P.2d at 882—as if "two stories" referred to anything but height.

Furthermore, even if ambiguity exists, it does not follow that the covenant is unenforceable. First, any ambiguity created by viewing the words "two stories in height" in an analytical vacuum vanishes with the recognition that, in the present case, it is undisputed that the Hoffmans' house is three stories. In other words, whatever "two stories" may mean in the mind of the majority, it simply does not include the Hoffmans' house.[1] Second, given the majority's emphasis on the covenant's underlying purpose of restricting the height of homes in order to protect view planes, the majority should grant, rather than deny, the requested relief, insofar as the uncontroverted evidence in this case establishes that the Hoffmans' house in fact impairs the views of their neighbors.[2] Such was the result in *Foster v. Nehls,* 15 Wash.App. 749, 551 P.2d 768 (1976), cited by the majority in support of its decision.[3] Indeed, the loophole created in this case effectively allows any homeowner in the Pacific Palisades neighborhood to build up to the maximum height envelope in the zoning ordinances—a height not mentioned or contemplated in the instant covenant. The majority thus does not merely rewrite the covenant, it eviscerates it. Purporting to interpret the covenant in light of its purpose of limiting height and protecting view planes, the majority deprives the covenant of any limiting effect and thus defeats the very purpose it purports to uphold.

One would hope that this decision does not serve to nullify the effect of existing restrictive covenants across this state.[4] Indeed, the majority appears to limit its holding by observing that "[i]f the purpose of the covenant was to preserve a two-story aesthetic character for the neighborhood, rather than to protect view planes, and if the covenant merely restricted all homes to 'two stories,' without adding the 'in height' language," *Majority* at 192, 977 P.2d at 882, it might deem the covenant unambiguous and enforceable.[5] In any event, the majority's approach is completely unworkable. It denies homeowners and purchasers the ability to rely on the plain language of covenants, requiring them to seek out evidence of the drafters' intent. It leads to the incongruous result of the identical language having two or more meanings depending on the intent alleged. Even apart from its ultimate effect on existing restrictive covenants, therefore, the majority opinion will have the negative impact of encouraging uncertainty, litigation, opportunistic non-compliance, and "un-neighborly" relations in general.

Finally, I remain unimpressed by the majority's general reliance on the "long-standing policy favoring the unrestricted use of property." *Id.* at 195, 977 P.2d at 885. First, the rule of construction states that

---

1. I note that none of the cases cited by the majority in support of its decision employed the majority's approach of "hypothesizing" an ambiguity to excuse an undisputed actual disparity between the covenant terms and the disputed structure.

2. The Hoffmans' neighbors submitted affidavits and photographs attesting to actual visual interference.

3. The court in *Foster,* notwithstanding ambiguity in the covenant terms, rejected defendants' argument that it had to reduce "one and one-half stories in height" to "an inches and feet definition" in order to find a violation and affirmed the order requiring the removal of the second story of the defendants' home to the extent that it violated the covenant's purpose of protecting views. *See* 551 P.2d at 771–72.

4. Almost any plainly worded covenant could become ambiguous under the majority's approach.

For example, although we have held that the term "single family dwelling" is unambiguous, *see Collins, supra,* a duplex could qualify under the majority's analysis as a "single family dwelling," insofar as a single family could occupy such a structure, and the drafters could have described the intended use in greater detail.

5. Closer scrutiny, however, reveals these distinctions to be spurious. Under the majority's "intent"-based approach, "two stories," without more, is no less ambiguous than "two stories in height." Furthermore, an appeal to the purpose of regulating aesthetics would offer little relief in cases involving generally "monolithic" structures (as opposed to terraced like the Hoffman's home), insofar as, in the same manner that a two-story house could stand as tall as a three-story house, a two-story house could have the same external appearance as a three-story house.

*"[s]ubstantial* doubt or ambiguity is resolved against the person seeking its enforcement." *Id.* at 190, 977 P.2d at 880 (citing *Waikiki Malia Hotel, Inc. v. Kinkai Properties Ltd. Partnership,* 75 Haw. 370, 384, 862 P.2d 1048 (1993)) (emphasis added). *See also Swaggerty v. Petersen,* 280 Or. 739, 572 P.2d 1309, 1313 (1977) ("Even under the traditional rule, ... a construction in favor of the unfettered use of property must be reasonable."). Here, no such substantial doubt exists, and any ambiguity that may exist does not apply to the actual three-story structure in this case. More fundamentally, where one hundred or more homeowners in the Pacific Palisades community have limited their own property rights in reliance that their neighbors will duly reciprocate,[6] I find it manifestly unjust to sanction the Hoffmans' willful noncompliance based on the "policy favoring the unrestricted use of property." [7] In my view, the majority opinion over-emphasizes the rights of the Hoffmans without due regard to the rights of their neighbors. *See Foster, supra* (upholding injunctive relief, notwithstanding ambiguity in the covenant terms, in light of the underlying purpose of protecting view planes, and because actual interference occurred).

For the above reasons, I respectfully dissent. I would hold that the covenant is unambiguous and enforceable and affirm the circuit court's judgment in all respects.

---

6. The majority rejects this statement as "hyperbolic" and unsupported by the record. *See Majority* at 191, 977 P.2d at 881 n. 1. Insofar as the Hoffmans themselves observe that the instant covenant covers 118 lots in the Pacific Palisades neighborhood and have at no time argued any "abandonment" of the covenant, I decline to ignore the logical conclusion that the neighborhood has largely, if not entirely, complied with the covenant.

7. I also find it ironic that the majority opinion effectively undermines the policies of "certainty" and "consistency" considered central to property rights.