IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MOSES H. MA and KRISTINE S. MA-BRECHT-MA, husband and wife, | ) ) ) | No. 73715-5-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| JAMES LARSON and PATRICIA A. LARSON, husband and wife; and ANTONETTE SMIT LYSEN, on her own behalf, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) | FILED: August 29, 2016 |

SCHINDLER, J. — The "Covenants, Conditions, and Restrictions" (CC&R) that govern the Shoreview plat limit single-family dwellings to "2½ stories in height." Moses H. Ma and Kristine S. Ma-Brecht-Ma (collectively, Ma) filed a declaratory judgment action against Shoreview homeowners James Larson and Patricia A. Larson (collectively, Larson) and Antonette Smit Lysen asserting the addition of a master bedroom floor did not violate the CC&R. Larson and Lysen filed a counterclaim and sought an injunction. On cross motions for summary judgment, Ma argued "½ story" unambiguously refers to half the area of the main floor below. Larson and Lysen argued the CC&R building restriction unambiguously refers to height and prohibits the third-story addition. Ma appeals the order granting summary judgment in favor of

Larson and Lysen, entry of the injunction, and the award of attorney fees and costs. We affirm.

The material facts are not in dispute. In 1947, the owner and grantor recorded the "Shoreview Addition" plat and a "Declaration of Restrictions, Reservations, Easements and Covenants" (CC&R). The Shoreview plat is located in Burien and has sweeping views of Puget Sound. The CC&R address the use of land and building restrictions. The building restrictions state a single-family house shall not exceed "2½ stories in height" and no house shall have "less than 1100 [square] [feet] of floor area."

> 1.  Use of Land:
>     a[.]   All lots in Shoreview shall be known, [described] and used as and for residential purposes only.  No commercial enterprise shall be permitted in Shoreview, other than the business of selling [said] lots, and the conducting of a utilities water system, and sewer system[.]
>     . . . .
> 2.  Building Restrictions.
>     a.   Only one single detached one-family dwelling of not to exceed 2½ stories in height; and one private attached or unattached garage for not more than 2 [cars] are permitted on any one lot, which [said] structure shall meet all other restrictions of land and [building] as provided herein.
>     b.   No residence structure costing less than $10,000 shall be erected or placed on any lots in [said] plat, except in [blocks] F. and G. where no residence structure costing less than $7500 shall be erected or placed on any lots in [said] [blocks], now [sic] shall any of [said] residences have less than 1100 [square] [feet] of floor area exclusive of porches and garages.

The CC&R state that in the event of a conflict with the zoning code, the code "restrictions shall take precedence and be enforced."

In 1967, the Shoreview Homeowners Association recorded revised CC&R. The revised building restrictions include an exception to the 2½-story height limit for extreme terrain, address when a daylight basement is considered "a story," and increase the

2

minimum cost of a structure but maintain the same square footage requirement.

2. BUILDING RESTRICTIONS
   (a) Only 1 single detached 1 family dwelling of not to exceed 2½ stories in height, exceptions may be granted in cases of extreme terrain. A daylight basement shall be considered a story if more than 50% exposed. One private garage and/or carport are permitted on any one lot, which said structure shall meet all other restrictions of land and building as provided.
   (b) No residence structure costing less than $20,000 shall be erected or placed on any lots of said plat, except in Blocks F and G where no residence structure costing less than $15,000 shall be erected or placed on any lots in said blocks, nor shall any of said residences have less than 1100 square feet of floor area exclusive of porches and garages.

Moses H. Ma and Kristine S. Ma-Brecht-Ma (collectively, Ma), James Larson and Patricia A. Larson (collectively, Larson), and Antonette Smit Lysen own property in the Shoreview plat. In 1967, Patricia Larson's parents purchased the property located at 12849 Shorecrest Drive SW. In 2001, her parents conveyed the property to Larson. In 1971, Lysen purchased property located at 12864 Shorecrest Drive SW. In 2005, Ma purchased property located at 12843 Shorecrest Drive SW. The Ma property is next to the Larson property. The Lysen property is across the street and slightly uphill from Larson and Ma. The Ma house has a main floor and a daylight basement. Lysen's house and Larson's house look directly down and over Ma's house toward Puget Sound.

In October 2013, Ma submitted an application to the city of Burien for a construction permit to "add on garage/renovate expand kitchen/add master bedroom floor." The proposed plan would increase the main floor from 2,306 square feet to 2,340 square feet and add a master bedroom floor 19 feet 8 inches by 47 feet, or

3

approximately 925 square feet. The "North Elevation" site plan shows the configuration of the current footprint and the planned addition.



In 2014, the city of Burien issued a permit for the proposed renovation and master bedroom floor. On September 10, 2014, Larson and Lysen sent a letter to Ma objecting to the plan to build a third story. Larson and Lysen asserted the proposed third story addition violated the 2½-story height restriction in the CC&R and would "seriously impact" their views.

On March 9, 2015, Ma filed a declaratory judgment action against Larson and Lysen to determine whether the planned addition is barred by the 2½-story height limit in the CC&R. Larson and Lysen filed a counterclaim seeking a declaratory judgment that the planned addition of the third story violates the CC&R. Larson and Lysen sought an injunction and an award of attorney fees and costs.

The parties filed cross motions for summary judgment. Ma asserted the only question was whether "covenant language limiting houses to two and a half stories in

height prohibit the addition of a floor that is smaller than half the size of the main floor." Ma argued "½ story" unambiguously means a story that is less than half the area of the story below. Ma argued that even if the CC&R building restrictions refer to height, the CC&R restriction conflicts with the 35 feet height limit of the city of Burien zoning code. Larson and Lysen argued the "2½ stories in height" restriction unambiguously refers to height. Larson and Lysen submitted photographs showing the third floor addition to the Ma house would block their views. Larson and Lysen also argued the CC&R building restriction did not conflict with the city of Burien zoning code.

The court granted Larson's and Lysen's motion for summary judgment. The court entered a permanent injunction that enjoined Ma from "constructing a house more than 2-1/2 stories in height on their property adjacent to the Larsons' property." The trial court awarded Larson and Lysen attorney fees and costs.

Ma contends the court erred in granting summary judgment. Ma asserts ½ story unambiguously refers to floor space, not height. Larson and Lysen argue the CC&R unambiguously restrict height.

We review an order on summary judgment de novo. Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). A party is entitled to summary judgment if there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. CR 56(c); Wilkinson, 180 Wn.2d at 249.

Interpretation of a restrictive covenant is a question of law we review de novo. Wimberly v. Caravello, 136 Wn. App. 327, 336, 149 P.3d 402 (2006). Washington courts apply the rules of contract interpretation. Wilkinson, 180 Wn.2d at 249. The primary goal in interpreting a covenant is to determine the intent of the drafter. Hollis v.

Garwall, Inc., 137 Wn.2d 683, 696, 974 P.2d 839 (1999). Although the drafter's intent is a question of fact, " 'where reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.' " Wilkinson, 180 Wn.2d at 250 (quoting Ross v. Bennett, 148 Wn. App. 40, 49-50, 203 P.3d 383 (2008)).

In determining the intent of the drafter, a court must give the language of a covenant its ordinary and common meaning and will not construe a term " 'so as to defeat its plain and obvious meaning.' " Wilkinson, 180 Wn.2d at 250 (quoting Mains Farm Homeowners Ass'n v. Worthington, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993)). We examine the language of a covenant in the context of the instrument in its entirety. Hollis, 137 Wn.2d at 694.

Ma relies on testimony cited in a footnote in Foster v. Nehls, 15 Wn. App. 749, 751 n.2, 551 P.2d 768 (1976), to argue the reference to a "½ story" unambiguously refers to the area of the main floor below. Ma asserts that because the proposed master bedroom floor addition is 39 percent of the area of the main floor below, there is no violation of the CC&R. Foster does not support Ma's argument.

In Foster, the neighbors objected to the construction of a second story to a home. Foster, 15 Wn. App. at 750. The neighbors argued the second story would obstruct their view in violation of the CC&R limiting a structure to " '[o]ne and one-half stories in height.' " Foster, 15 Wn. App. at 750.[1] The CC&R stated, in pertinent part:

> "No structures shall be erected, altered, placed, or permitted to remain on any residential building plot other than one detached single-family dwelling not to exceed one and one-half stories in height and a

---

[1] Emphasis omitted.

6

private garage for not more than two cars."

Foster, 15 Wn. App. at 750.[2]

At trial, the homeowner presented testimony of a city building inspector and a contractor/real estate broker. The city building inspector testified that " '[o]ne and a half stories in normal nomenclature' " means a second story " 'is half of the area' " of the story below. Foster, 15 Wn. App. at 751 n.2. The contractor/real estate broker testified that " 'one and a half story in architectural style would be a house that has the second living area generally a portion percentage of the main floor area.' " Foster, 15 Wn. App. at 751 n.2. But the contractor/real estate broker agreed that "the term [one and a half story] involved architectural design rather than height of a building." Foster, 15 Wn. App. at 751 n.2.

The trial court did not address the meaning of " 'one and one-half stories in height.' " Foster, 15 Wn. App. at 750.[3] The trial court concluded other evidence showed the restrictive covenant prohibited construction of any residence that substantially obstructs views. Foster, 15 Wn. App. at 750.

On appeal, the court states the testimony at trial on the meaning of " 'one and one-half stories' " created ambiguity. Foster, 15 Wn. App. at 751.[4]

> Ambiguity exists in the present case by the use of a floor-space description common in the construction and real estate business ("one and one-half stories") to describe a height restriction ("one and one-half stories in height").

Foster, 15 Wn. App. at 751.[5] The Foster court noted, "Doubtful intent must be resolved

---

[2] Emphasis omitted.
[3] Emphasis omitted.
[4] Emphasis omitted.
[5] Footnote omitted.

in favor of the free use of land." Foster, 15 Wn. App. at 751.[6] But the court concluded the trial court properly considered other testimony that established "it was not the intent of the parties to reduce the height restriction to an inches and feet definition, but to protect the view enjoyed by other neighbors regardless of the actual height of the obstructing buildings." Foster, 15 Wn. App. at 751.

Here, unlike in Foster, Ma presented no expert testimony about the meaning of the term "½ story." And unlike the CC&R in Foster, the language used in the Shoreview CC&R establishes the intent of the drafter to refer to height, not to the square footage. The CC&R building restrictions specifically refer to the square footage of floor space. CC&R 2(b) states no residence shall "have less than 1100 square feet of floor area exclusive of porches and garages." The language used shows the drafter intended the "2½ stories in height" as used in 2(a) to refer to height not to square footage and floor space. Ma's interpretation also does not take into account the "in height" language. See Better Fin. Sols., Inc. v. Transtech Elec., Inc., 112 Wn. App. 697, 711, 51 P.3d 108 (2002) (contracts must be read so that each provision is given effect and none is rendered meaningless).[7]

The exception to the building restriction for 2½ stories in height also indicates an intent to interpret ½ story as a reference to height. The exception allows a house

---

[6] We note our Supreme Court expressly abandoned use of the rule that doubtful intent must be resolved "in favor of the free use of land" in disputes between homeowners governed by the same restrictive covenants. See Riss v. Angel, 131 Wn.2d 612, 623, 934 P.2d 669 (1997) ("[W]here construction of restrictive covenants is necessitated by a dispute . . . among homeowners in a subdivision governed by the restrictive covenants, rules of strict construction against the grantor or in favor of the free use of land are inapplicable.").

[7] The out-of-state cases Ma relies on are also inapposite. See Madden v. Zoning Bd. of Review of City of Providence, 48 R.I. 175, 136 A. 493 (1927); O'Connell v. City of Brockton Bd. of Appeals, 344 Mass. 208, 181 N.E.2d 800 (1962); Johnson v. Linton, 491 S.W.2d 189 (Tex. Civ. App. 1973); Hiner v. Hoffman, 90 Haw. 188, 977 P.2d 878 (1999).

located on "extreme terrain" to exceed the 2½ stories height restriction to allow construction that will not block the views of the uphill homes. The CC&R exception demonstrates an intent to accommodate steep terrain while maintaining view preservation. We conclude the unambiguous language of the CC&R establishes the unambiguous intent to restrict the height of a house to 2½ stories.

Even if the 2½ stories restriction refers to height, Ma contends the CC&R conflict with the zoning code. The CC&R state that "[i]n the event of conflict between these and County Zoning Restrictions, the County restrictions shall take precedence and be enforced."

The city of Burien zoning code allows a 35-foot-high single-family home. Burien Municipal Code 19.15.005.2. Because the proposed addition would result in a house that is less than 35 feet, Ma claims the CC&R conflict with the city zoning code. We disagree. Because the zoning height limitation and the CC&R are not contradictory, there is no conflict.

> Where both the ordinance and the statute are prohibitory, and the difference between them is that the ordinance goes further in its prohibition, they are not deemed inconsistent because of mere lack of uniformity in detail. . . . [T]hey are not "contradictory in the sense that they cannot coexist."

Brown v. City of Yakima, 116 Wn.2d 556, 562-63, 807 P.2d 353 (1991)[8] (quoting City of Seattle v. Eze, 111 Wn.2d 22, 33, 759 P.2d 366 (1988)); see also City of Bellingham v. Schampera, 57 Wn.2d 106, 111, 356 P.2d 292 (1960).

Ma also contends the court erred in awarding Larson and Lysen attorney fees as special damages under the CC&R. The parties dispute whether Ma waived the right to

---

[8] Internal quotation marks omitted.

9

challenge the attorney fee award on appeal. Larson and Lysen contend the undisputed record shows Ma did not timely respond to the request for an award of attorney fees and the court did not authorize or consider the untimely response.

On June 26, 2015, Larson and Lysen filed a motion requesting attorney fees and costs. The motion was set for hearing without oral argument on July 9. King County Superior Court Local Civil Rules (LCR) required Ma to respond by noon on July 7. LCR 7(b)(4)(D).[9] Ma did not file a response on July 7.

At approximately 9:00 a.m. on July 8, Larson and Lysen filed a reply stating Ma did not timely respond. At approximately 3:00 p.m. that same day, Ma filed a one and one-half-page response to the motion for attorney fees and costs. Ma did not seek permission to file a late response or assert good cause or excusable neglect. Larson and Lysen objected to the late-filed response arguing Ma did not show good cause or excusable neglect. The court did not authorize Ma to file the late-filed response and did not consider the late-filed response. See LCR 7(b)(4)(G) ("Any material offered at a time later than required by this rule, and any reply material which is not in strict reply, will not be considered by the court over objection of counsel except upon the imposition of appropriate terms, unless the court orders otherwise.").

Because the record establishes Ma did not timely file a response to the request for an award of attorney fees and costs, Ma did not show good cause or excusable neglect, and the court did not consider the late-filed response, we decline to consider

---

[9] LCR 7(b)(4)(D) states, in pertinent part:

Any party opposing a motion shall file and serve the original responsive papers in opposition to a motion, serve copies on parties, and deliver working copies to the hearing judge no later than 12:00 noon two court days before the date the motion is to be considered.

the challenge to the award of attorney fees and costs.  RAP 2.5(a); see also Bennett v. Hardy, 113 Wn.2d 912, 917, 784 P.2d 1258 (1990).

We affirm.

Schindler, J

WE CONCUR:

Spearman, J.

Appelwick, J