**Electronically Filed
Supreme Court
SCWC-16-0000783
19-NOV-2021
07:56 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

JOHN S. GAILLIARD and JODI L. GAILLIARD,
Respondents/Plaintiffs-Appellees,

vs.

ELIZABETH RAWSTHORNE, Petitioner/Defendant-Appellant,

and

WILLIAM BATES, Defendant-Appellant.

SCWC-16-0000783

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000783; 3CC14100366K)

NOVEMBER 19, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

Both parties to this breach of covenant case are property owners in the Ali'i Heights Subdivision in Kailua-Kona, Hawai'i.  Plaintiffs John and Jodi Gailliard brought suit

alleging that their directly-adjacent neighbor, Defendant Elizabeth Rawsthorne, was in breach of a restrictive covenant contained in the Aliʻi Heights Subdivision's Declaration of Covenants, Conditions and Restrictions for Aliʻi Heights Subdivision, Phase I (Declaration). Section 3.14 of the Declaration states: "Trees/Shrubs: Trees, shrubs, bushes, hedges and all other plants on every lot shall be maintained at a reasonable height so as not to interfere with the viewplanes [sic] available to any other lot." After a bench trial, the circuit court ordered that Rawsthorne maintain any plants on her property at a height not to exceed the roofline of her residence, and awarded the Gailliards $40,000.00 in damages plus attorney's fees in the amount of $28,618.09. The Intermediate Court of Appeals (ICA) affirmed in a summary disposition order (SDO).[1] The ICA additionally granted the Gailliards' motion for attorney's fees on appeal, awarding the Gailliards $15,706.00.

Rawsthorne's application for writ of certiorari argues, inter alia, that the ICA erred in awarding the Gailliards appellate attorney's fees for the total amount requested, as Hawaiʻi Revised Statutes (HRS) § 607-14[2] limits the

_____

[1]  As set forth below, Rawsthorne did not challenge the circuit court's attorney's fees award in her appeal to the ICA. Thus, the ICA did not address that award.

[2]  HRS § 607-14 states in relevant part:

2

amount a party may receive in attorney's fees to 25% of the total award.  We agree and hold that the ICA should have limited its appellate attorney's fees award to $10,000 - 25% of the $40,000 damages award the Gailliards received.  Because Rawsthorne did not appeal the circuit court's order granting attorney's fees, we decline to address that award.  We accordingly vacate in part the ICA's judgment on appeal awarding the Gailliards attorney's fees on appeal for the full amount requested, and remand to the ICA with instructions to adjust the appellate attorney's fees award to $10,000 plus excise tax.  We otherwise affirm the ICA's judgment on appeal.

## II.  BACKGROUND

Rawsthorne purchased her property in December 2009. The Gailliards purchased their lot, located mauka[3] of Rawsthorne's lot, in September 2012.  Both properties are subject to the "Declaration of Covenants, Conditions and Restrictions for Alii Heights Subdivision, Phase 1," which was

---

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorney's fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . provided that this amount shall not exceed twenty-five per cent of the judgment.

[3]    The Hawaiian Dictionary defines the term "Mauka" as "Uka" meaning "inland, upland, towards the mountain[.]"  See Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary 242, 365 (1986).

recorded in the State of Hawai'i Bureau of Conveyances on January 28, 2003.

Jodi Gailliard first approached Rawsthorne on November 21, 2013, to request that she trim her trees and other plants in order to restore and preserve the Gailliards' view planes in conformity with the Declaration. Rawsthorne responded by stating that there is no homeowners' association at Ali'i Heights, therefore the Declaration is unenforceable, and the Gailliards' only remedy was to "move." Following this interaction, the Gailliards retained legal counsel and began to send demand letters to Rawsthorne. After a second demand letter, Rawsthorne removed or trimmed approximately 50 of her plants.

Despite Rawsthorne's attempts to meet the Gailliards' demands, on or around July 14, 2014, John Gailliard went to Rawsthorne's property to discuss her plants and requested that Rawsthorne "come up to his property so they could see how [the Gailliards'] views were obstructed." Rawsthorne refused, "interpret[ing] the request as a demand that [Rawsthorne] completely clear their backyard of any vegetation that [the Gailliards] found objectionable." The Gailliards filed a complaint in the circuit court, which they later amended. In the amended complaint, the Gailliards raised two claims: a breach of contract claim, and a claim for injunctive relief.

After a bench trial, the circuit court[4] found in favor of the Gailliards on the breach of contract claim. In its Findings of Fact, Conclusions of Law and Order Regarding Jury Waived Trial (Order) filed on March 30, 2016, the circuit court concluded that Rawsthorne's plants "interfere[d] with [the Gailliards'] view planes" and thus "violated Section 3.14 of the Declaration," and ordered Rawsthorne "trim and maintain" her plants so they would not exceed "the roofline of" Rawsthorne's property. Moreover, the circuit court concluded that the Gailliards' "property value was diminished by $40,000 for the period of [Rawsthorne's] breach of contract, specifically of Section 3.14 of the Declaration," and awarded damages in the amount of $40,000.00. The circuit court also awarded "Plaintiffs reasonable attorney[']s fees and costs pursuant to Section 6.5(b)[5] of the Declaration." The circuit court determined that count two of the Gailliards' complaint requesting injunctive relief was moot.

Rawsthorne filed a motion for reconsideration contending, among other things, that the circuit court "did not

---

[4]     The Honorable Melvin H. Fujino presided.

[5]     Section 6.5(b) of the Declaration states: "If a legal proceeding is brought to enforce the requirements, restrictions and other provisions set forth in this Declaration, or any of them, the prevailing party or parties shall be entitled to have and recover from the losing party or parties reasonable attorney[']s fees and costs of suit."

enter a single finding of fact" supporting that Rawsthorne violated the Covenant. The circuit court denied Rawsthorne's motion, concluding that "no new evidence and/or arguments were presented which could not have been presented during the earlier adjudicated motion."

The Gailliards moved for attorney's fees, requesting $59,346.18. Rawsthorne opposed the request, arguing, inter alia, that the requested amount exceeded the 25% cap under HRS § 607-14. The Gailliards argued in reply that the 25% cap did not apply because the Aliʻi Heights Subdivision was a planned community association, see HRS § 607-14, and because the Gailliards sought and obtained non-monetary relief, see Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc., 58 Haw. 606, 575 P.2d 869 (1978).[6] Following a hearing on the motion, the circuit court issued its Order Regarding Plaintiffs' Submission of Attorney's Fees and Costs on July 14, 2016, and granted the Gailliards an attorney's fees award of $28,618.09, reducing the amount requested by half for the Gailliards' failure to apportion the work.[7] The circuit court did not expressly address

_____

[6] Neither the Gailliards nor Rawsthorne raised the applicability of Food Pantry on appeal to the ICA or in this court, and accordingly, we do not address it further here.

[7] The court reduced the Gailliards' amended request of $53,994.35 to $28,618.09 by removing the cost of the expert report for untimeliness, reducing the fees for clerical matters, and reducing the remaining award by 50% for the Gailliards' failure to "apportion the amount of time spent on

Rawsthorne's argument that HRS § 607-14 limited the attorney's fees the Gailliards may collect to 25% of the damages award. However, the attorney's fees awarded by the circuit court exceeded 25% of the judgment. The circuit court entered its Final Judgment against Rawsthorne on August 24, 2016.

Rawsthorne appealed. In her Opening Brief, Rawsthorne argued the circuit court erred in concluding she violated the Declaration. Rawsthorne did not challenge the circuit court's attorney's fees award.

The ICA affirmed the judgment, and the Gailliards filed a motion for appellate attorney's fees requesting an additional $15,706.00[8] pursuant to HRS § 607-14 and Sections 3.14 and 6.5 of the Declaration. Rawsthorne again argued that "[b]ecause Appellees are requesting an award of attorney's fees pursuant to the authority in HRS § 607-14, which limits such awards to 25% of the judgment exclusive of fees and costs, Appellant objects to any award of attorney's fees to Appellees over $10,000."

_____

claims outside of the claims awarded."

[8] An attached declaration of counsel indicated that counsel had "elected to defend this appeal for $15,000 plus excise tax of $706, representing 75 hours at $200 an hour," and attached an exhibit detailing 75 hours of work performed by counsel. Rawsthorne opposed the motion and argued, as relevant here, that "[t]he billing statement attached . . . contains charges for clerical work including 2.0 hours . . . to 'Draft Conclusion, Tables, Certificate of Service' and 2.0 hours on March 16, 2018 to 'Proof, reduce, E-File AB; email copy to Whittaker and John[.]'"

7

In their reply brief, the Gailliards argued that the Aliʻi Heights Subdivision was a planned community association, and thus exempted from the 25% cap on attorney's fees awards under HRS § 607-14.[9]  Gailliard also contended that:

> Appellants challenged the fees and costs below, citing the same 25% limitation in HRS Section 607-14, and the court rejected that argument and awarded Appellees $28,618 in fees and costs, or 70% of the $40,000 judgment.  When they appealed, Appellants did not challenge the fee award, the amount of fees, or the court's ruling on HRS Section 607-14.  That ruling is law of the case.

(Emphasis omitted and added.)

The ICA awarded the Gailliards attorney's fees on appeal for $15,706.00, the entire amount requested.  The award exceeded 25% of the circuit court's damages award.[10]  In its order, the ICA concluded that "the attorney's fees in the requested amount of $15,706.00 [were] reasonable."

Rawsthorne timely filed her application for writ of certiorari and argues that the ICA erred by: (1) concluding the language of the Covenant was not vague or ambiguous so as to render the Covenant unenforceable; (2) concluding Rawsthorne violated the Covenant; (3) concluding the circuit court properly

---

[9]     HRS § 607-14 additionally states, in relevant part, "Nothing in this section shall limit the recovery of reasonable attorneys' fees and costs by a planned community association and its members in actions for the . . . enforcement of any provision of the association's governing documents[.]"

[10]     Although the ICA cited HRS § 607-14 in its order approving attorney's fees on appeal, it did not address Rawsthorne's argument that a planned community association did not exist at the Aliʻi Heights Subdivision and thus the property is subject to the 25% statutory cap on attorney's fees under that statute.

awarded the Gailliards damages for diminution of value without first establishing the period of time for when such an award was proper; (4) concluding the circuit court did not abuse its discretion in denying Rawsthorne's motion for reconsideration; and (5) awarding the Gailliards attorney's fees of $15,706.00.

In support of her fifth point, Rawsthorne argues that the ICA erred in awarding the Gailliards $15,706.00 in attorney's fees on appeal because "there is no planned community association for the Alii Heights Subdivision," and thus the "planned community association exception" is inapplicable. Accordingly, the appellate fee award should have been capped at $10,000.00. Additionally, Rawsthorne argues that "the ICA awarded attorney's fees for time spent on clerical tasks," and that "[c]ourts should reduce an award of attorney's fees for . . . performance of clerical functions." (Quoting Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 458, 32 P.3d 52, 102 (2001).)

In response to Rawsthorne's certiorari application, the Gailliards argue, among other things, that the Aliʻi Heights subdivision is a planned community association within the meaning of HRS § 607-14, and thus, the 25% limit on attorney's fees does not apply. Moreover, the Gailliards contend that Rawsthorne argued at the circuit court that HRS § 607-14 limited the attorney's fees award the Gailliards may recover, but the

9

circuit court rejected this argument when it granted the Gailliards' attorney's fees award exceeding 25% of the judgment. The Gailliards argued that Rawsthorne "did not challenge that ruling on appeal. As such, [Rawsthorne] clearly waived any objection on these specific grounds on appeal."

The Gailliards next contend that "proofing and reducing a brief to bring it into compliance with court rules[ ] is an essential task by appellate counsel, and not a clerical function." (Internal quotations omitted.)

Rawsthorne replied, and asserts that "[a]n award of appellate attorney's fees is not dependent on attorney's fees being awarded by the trial court," and thus her decision not to appeal the circuit court's attorney's fees award is irrelevant. Stated differently, Rawsthorne believed that her decision not to appeal the circuit court's attorney's fees award did not preclude her from challenging the ICA's appellate attorney's fees awards.

Rawsthorne additionally cites Employee Management Corp. v. Aloha Group, Ltd., 87 Hawai'i 350, 351, 956 P.2d 1282, 1283 (App. 1998), and contends, for the first time on appeal, that HRS § 607-14 "places a twenty-five percent maximum combined total limit that can be taxed against a losing party by both the trial and appellate courts." (Emphases added.) "The trial court and ICA have together awarded [the Gailliards] $44,324 in

attorney's fees on a $40,000 judgment. Based on the express words and holding of the ICA in <u>Aloha Group</u>, the award of attorney's fees over $10,000 . . . is a grave error." In other words, Rawsthorne contends that the total amount of attorney's fees awarded by both the circuit court and the ICA should not have exceeded $10,000.00.

### III. STANDARDS OF REVIEW

#### A.   Attorney's Fees

"It is well settled that no attorney's fees may be awarded as damages or costs unless so provided by statute, stipulation, or agreement." <u>Hawaiian Isles Enters., Inc. v. City & Cnty. of Honolulu</u>, 76 Hawai'i 487, 489, 879 P.2d 1070, 1072 (1994) (citations, brackets and quotations marks omitted). "The construction and legal effect given a contract provision governing the award of attorneys' fees is a question of law, which we review under the right/wrong standard." <u>Id.</u> (citation omitted).

"[The Hawai'i Supreme Court] reviews the . . . denial and granting of attorney's fees under the abuse of discretion standard. . . . An abuse of discretion occurs where the [court] has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." <u>Oahu Publ'ns, Inc. v. Abercrombie</u>, 134 Hawai'i 16, 22, 332 P.3d 159, 165 (2014) (quotation marks and

11

citations omitted).

## B.    Findings of Fact (FOF)/Conclusions of Law (COL)

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review.  An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed."  Chun v. Bd. of Trs. of the Emps.' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting State v. Hutch, 75 Haw. 307, 328, 861 P.2d 11, 22 (1993)).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness.  [The appellate court] ordinarily reviews COLs under the right/wrong standard.  Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.  However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun, 106 Hawai'i at 430, 106 P.3d at 353 (internal quotation marks, citations, and brackets omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

## C.    Motion for Reconsideration

> [T]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion.  Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (quoting Sousaris v. Miller, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000)).

The appellate court reviews a "trial court's ruling on a motion for reconsideration . . . under the abuse of discretion standard." Wailea Elua, 100 Hawai'i at 110, 58 P.3d at 621. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

## IV.  DISCUSSION

**A.   The ICA Erred in Awarding the Gailliards $15,706.00 in Attorney's Fees on Appeal**

**1.   The twenty-five percent cap on attorney's fees under HRS § 607-14 applies to the Ali'i Heights Subdivision as it is not a "planned community association" as defined by the statute.**

HRS § 607-14 defines a planned community association as "a nonprofit homeowners or community association existing pursuant to covenants running with the land."  In order to qualify under the planned community associations exception, the court must determine whether: (1) there is a nonprofit community association, and (2) the association "exist[s] pursuant to covenants running with the land."  See Kaanapali Hillside

13

Homeowners' Ass'n ex rel. Bd. Of Dirs. v. Doran, 114 Hawai'i 361, 372, 162 P.3d 1277, 1288 (2007). The Gailliards contend that Rawsthorne raised this argument in her memorandum in opposition to the Gailliards' declaration requesting attorney's fees totaling $53,994.35 filed in the circuit court, but did not appeal the circuit court's order awarding attorney's fees totaling over 25% of the judgment, thus waiving the argument. Stated another way, Rawsthorne's decision not to challenge the fee award accordingly resulted in the circuit court's ruling as to the "planned community association" question becoming the "law of the case."

The Gailliards are correct that Rawsthorne's application for writ of certiorari seeks review of only the ICA's attorney's fees award, and thus any objection to the circuit court's attorney's fees award is "deemed to have been waived on appeal." See State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003); Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

However, the Gailliards are incorrect that Rawsthorne's decision not to appeal the circuit court's award of attorney's fees precludes our review of the ICA's award of appellate attorney's fees. The awards are separate, and Rawsthorne's decision not to appeal the circuit court's attorney's fees award does not bar her from challenging

14

attorney's fees awarded on appeal.  Cf. S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 76 Hawai'i 396, 402, 879 P.2d 501, 507 (1994) (holding that attorney's fees incurred at trial and on appeal are separate).

Moreover, the Gailliards' argument that the "law of the case" doctrine bars Rawsthorne from reraising the argument that the 25% limit on attorney's fees awarded under HRS § 607-14 applies to the Ali'i Heights Subdivision is no more persuasive. This court recently held that "when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." PennyMac Corp. v. Godinez, 148 Hawai'i 323, 331, 474 P.3d 264, 272 (2020) (citing Arizona v. California, 460 U.S. 605, 618 (1983)).  In PennyMac, this court recognized that "the [law of the case] doctrine can also be invoked by a trial court with respect to its own rulings, and in that instance, the doctrine is discretionary and operates as a presumption against reconsideration." Id. at 331, 474 P.3d at 272 (citation omitted).  Moreover, "when the law of the case has been established by an appellate court, the lower court is obliged to apply it." Id. at 331 n.10, 474 P.3d at 272 n.10 (citing Ditto v. McCurdy, 98 Hawai'i 123, 128, 44 P.3d 274, 279 (2002) (quotation marks omitted)).  However, we have not previously addressed whether and how the doctrine operates in

15

the circumstances of the instant case: where a circuit court rules on an issue of law, a party chooses not to appeal, and the appellate court is tasked with addressing the same issue in a different circumstance.

However, other jurisdictions have concluded that the law of the case doctrine does not bind appellate courts to a ruling made by a lower court. Indeed, the United States Supreme Court has held that the law of the case doctrine "cannot bind [the Supreme Court] in reviewing decisions" of lower courts. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 803 (1988) (emphasis added); accord In re Raynor, 617 F.3d 1065, 1069 (8th Cir. 2010) (holding that the law of the case doctrine does not apply in a case "involv[ing] direct appellate review . . . of trial and intermediary appellate decisions. In doing so, [the reviewing court is] not bound by the decisions of inferior courts, even lower courts acting as an appellate court"). Therefore, we hold that the circuit court's conclusion that the 25% limit on attorney's fees under HRS § 607-14 does not apply to the Ali'i Heights Subdivision is not binding on this court.

We thus look to the language of the statute in guiding our disposition. The statute defines a "planned community association" as "a nonprofit homeowners or community association existing pursuant to covenants running with the land." HRS

§ 607-14. In <u>Doran</u>, the court concluded that the Kaanapali
Hillside Homeowners' Association was a planned community
association under HRS § 607-14, noting that "employees of [the
developers of the Kaanapali Hillside Subdivision,] filed a
Petition for Charter of Incorporation with the [Department of
Commerce and Consumer Affairs], State of Hawai'i, seeking to form
[Kaanapali Hillside Homeowners' Association] as a non[]profit
corporation." <u>Id.</u> at 364, 162 P.3d at 1280. The Gailliards
have not identified any evidence in the record establishing the
creation of a similar homeowners association at Ali'i Heights,
and the Declaration itself does not establish a homeowners'
association. The 25% cap on attorney's fees thus applies.[11]

However, although there is precedent for applying the
25% limit to the combined total of both the trial court and
appellate awards, <u>see</u> <u>Aloha Group</u>, 87 Hawai'i at 352, 956 P.2d at
1285, we apply the 25% cap to the appellate award only – as
opposed to the aggregate of the trial and appellate awards.
Rawsthorne did not argue that the ICA should aggregate the
circuit court and ICA attorney's fees awards when considering

---

[11] Insofar as the circuit court erred in concluding that the 25%
statutory cap on attorney's fees did not apply, Rawsthorne's decision not to
challenge the circuit court's attorney's fees award precludes our review of
that award. As such, we decline to hold that the circuit court erred in
awarding the Gailliards an attorney's fees award in excess of 25% of the
judgment.

the 25% limit under HRS § 607-14 in her memo in opposition to the requested attorney's fees filed in the ICA, nor did she raise it in her application for writ of certiorari. Rawsthorne cites Aloha Group for the first time in her reply in response to the opposition to the application for writ of certiorari.[12]

Since Rawsthorne did not raise this argument until she filed her reply brief, and because review of the circuit court award is waived, we only consider the ICA award. See Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 472 n.17, 164 P.3d 696, 730 n.17 (2007) ("[Appellant's] aforementioned point of error is deemed waived for failure to present any argument in its opening brief in the first instance and presenting such arguments in its reply brief to which no answer could be made." (citation omitted)); Matter of Hawaiian Flour Mills, Inc., 76 Hawai'i 1, 14 n.5, 868 P.2d 419, 432 n.5 (1994) (holding that arguments raised for the first time in reply briefs on appeal

---

[12]    Indeed, Rawsthorne's memo in opposition to the Gailliards' requested attorney's fees on appeal argued that "Appellant objects to any award of attorney's fees to Appellees over $10,000."  (Emphasis added.) Stated another way, Rawsthorne was not arguing that HRS § 607-14 prohibited the ICA from awarding any attorney's fees to the Gailliards.  Rather, Rawsthorne objected to any attorney's fees on appeal that exceeded $10,000.00.  Similarly, her application for writ of certiorari contends that "[t]he ICA gravely erred by awarding attorney's fees in the full amount requested by Respondents."  (Emphasis added.)  In other words, Rawsthorne's application did not argue that it was an error for the ICA to award the Gailliards any attorney's fees, but that it was an error for the ICA to award the full amount requested by the Gailliards, which exceeded $10,000.00.  Both arguments thus implied that Rawsthorne believed it was an error for the ICA to grant appellate attorney's fees over $10,000.00.  And neither argument implied that the appellate attorney's fees award must be aggregated with the trial court's attorney's fees award.

18

are deemed waived).  We thus conclude that the ICA could award the Gailliards no more than $10,000 plus excise tax on appeal, and thus erred by awarding $15,706.00 in attorney's fees on appeal.

2.   **The ICA did not abuse its discretion in awarding the Gailliards attorney's fees for the work for which they requested compensation**

Rawsthorne additionally claims that the Gailliards' calculation of attorney's fees includes items similar to clerical work we have previously determined was non-recoverable. See Schefke, 96 Hawai'i at 458, 32 P.3d at 102 ("Courts should reduce an award of attorney's fees for . . . performance of clerical functions.").  Specifically, Rawsthorne argues that the Gailliards' request "includ[ed] [time] for drafting [t]ables and a certificate of service, and e-filing a brief."  (Internal quotation marks omitted.)  However, HRS § 607-14 provides the court with discretion in determining what fees are reasonable. See HRS § 607-14 ("[I]n all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party. . . a fee that the court  determines to be reasonable[.]" (emphasis added)).  Because, as the Gailliards correctly suggest, "proofing and reducing a brief to bring it into compliance with court rules[ ] is an essential task by appellate counsel, and not a clerical function," the ICA did not

19

abuse its discretion in determining that the fees for this work were recoverable. (Internal quotations omitted.)

## B. The ICA Correctly Affirmed the Circuit Court's March 30, 2016 Order on the Merits

Turning to Rawsthorne's remaining points on appeal related to the merits of the Gailliards' breach of covenant claim, we conclude that the ICA did not err in affirming the circuit court's Order and Final Judgment.

### 1. Section 3.14 of the Covenant is not ambiguous.

Rawsthorne argues that the Covenant is similar to the covenant this court concluded was ambiguous in Hiner v. Hoffman, 90 Hawai'i 188, 977 P.2d 878 (1999). In Hiner, this court held that the "covenant at issue provid[ing] that 'no dwelling shall be erected, altered, placed or permitted to remain . . . which exceeds two stories in height'" was ambiguous. 90 Hawai'i at 190, 977 P.2d at 880 (brackets and emphasis omitted). This court reasoned that without a "numerical measure[ment]," the covenant was ambiguous, leaving residents to guess what constituted a reasonable height. Id. Essentially, the phrase "two stories in height" was ambiguous because not all two-story homes are the same height; without a numerical measurement of what "exceeds" the permissible height limit, the covenant was unenforceable. Thus, the Hiner covenant could be interpreted to permit a two-story home that was 40-feet in height to be built,

but not a three-story home that was 30-feet in height.  If the intent of the Hiner covenant - as the parties agreed - was to "establish concrete height restrictions," id. at 191, 977 P.2d at 881, then the covenant failed to properly fulfill its purpose.

Rawsthorne thus contends that the phrase "reasonable height" is ambiguous without a specific numerical measurement. Unlike Hiner, in the instant case, a mechanical rule requiring that plants meet a specified numerical height would be ineffective in carrying out the intent of the Covenant.  For example, a fifteen-foot height limit might protect the view planes of some lots while not adequately protecting the view planes of others.  Additionally, a numerical height limit might have the adverse effect of allowing lot owners whose views are not impeded by their neighbors' plants to nonetheless require the "offending" neighbors trim their plants merely for exceeding the limit.

Moreover, Rawsthorne's argument that view planes require a definite and clear definition is no more persuasive as the view planes from one lot will differ from the view planes of another lot.  Therefore, the same concerns raised by the plaintiffs seeking enforcement of the Hiner covenant is not present here; the Covenant's language clearly defines a "reasonable height" for plants as one that does "not [ ]

interfere with the view planes available to any other lot[.]"
As such, the circuit court did not err in concluding that the
Covenant was not ambiguous.

2.    **The circuit court's conclusion that Rawsthorne was in violation of the Covenant is not clearly erroneous.**

Likewise, we cannot say the circuit court's conclusion
that Rawsthorne was in violation of the Covenant was clearly
erroneous.  In addition to citing testimony by two neighbors
supporting the Gailliards' claim that Rawsthorne's plants
violated the Covenant, the trial court's FOFs also noted that:

> 22.  The Court conducted a site visit after the conclusion
> of trial, to observe if the Defendants' trees, shrubs,
> bushes, hedges and other plants are maintained "at a
> reasonable height so as not to interfere with the view
> planes available to any other lot[.]"

(Emphasis added.)

The circuit court additionally took into consideration
two pictures submitted by the Gailliards.  In light of the
evidence in the record, we cannot say that the circuit court's
conclusion that Rawsthorne violated the Covenant is clearly
erroneous.

3.    **The circuit court did not err in awarding the Gailliards diminution of value damages for a four-year period.**

"[T]he question for the appellate court under Rule
52(a) is not whether it would have made the findings the trial
court did . . . but whether it is left with a definite and firm
conviction that a mistake has been made."  Sandstrom v. Larsen,

22

59 Haw. 491, 495, 583 P.2d 971, 976 (1978) (citations omitted).

In its FOFs, the circuit court found:

> 23. Plaintiffs testified regarding the impact that Defendants' violation of Section 3.14 of the Declaration had on the value of their property. [ ]
>
> 24. Plaintiffs testified during their depositions in December 2015 that their property decreased in value by approximately $40,000. [ ]

Additionally, the circuit court concluded in its COLs:

> 11. This court finds by a preponderance of the evidence, the Plaintiffs' property value was diminished by $40,000 for the period of Defendants' breach of contract, specifically of Section 3.14 of the Declaration.

Although the court did not specifically note the period for which it was awarding the $40,000 damages award, the court's FOFs make clear that it considered various evidence, including photographs from as early as November 2012, and testimony from multiple individuals. Thus, the circuit court's award of $40,000 in damages is not clearly erroneous so as to warrant "a definite and firm conviction that a mistake has been made." Sandstrom, 59 Haw. at 495, 583 P.2d at 976.

### 4. The circuit court did not abuse its discretion in denying Rawsthorne's motion for reconsideration.

In her motion for reconsideration, Rawsthorne raised two arguments: first, the circuit court did not identify any facts supporting its finding that the Gailliards had proven by a preponderance of the evidence that Rawsthorne violated the Covenant, and second, that the damages awarded to the Gailliards constituted impermissible double recovery. Rawsthorne argued

23

that the first ground for reconsideration is based on the Findings of Fact and Conclusions of Law, and "[t]he second ground . . . is based on the award issued" to the Gailliards for diminution in value.

A motion for reconsideration is limited to "allow[ing] the parties to present new evidence and/or arguments that could not have been presented during" trial and is "not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding." Wailea Elua, 100 Hawai'i at 110, 58 P.3d at 621 (2002) (citation omitted). Rawsthorne challenged the Order itself without presenting new evidence that she could not have presented at trial. Although she argued that the evidence was not available because the Order did not exist at the time of trial, such an argument is unpersuasive. Rawsthorne knew that the Gailliards sought both a permanent injunction and money damages. And, at the Gailliards' depositions, both Jodi and John Gailliard testified that the value of their property decreased by approximately $40,000.00 due to Rawsthorne's plants obstructing their view. Thus, Rawsthorne knew or should have known that the Gailliards sought diminution in value damages of at least $40,000.00. Moreover, Rawsthorne could have disputed the Gailliards' evidence supporting their request for $40,000.00 in damages at trial. Rawsthorne's contention that she did not

24

know the circuit court would have awarded the Gailliards $40,000.00 in damages is thus unpersuasive and the circuit court's denial of Rawsthorne's motion for reconsideration was not an abuse of discretion.

## V.    CONCLUSION

For the foregoing reasons, we vacate in part the ICA's September 29, 2020 judgment on appeal awarding the Gailliards $15,706.00 in appellate attorney's fees and remand to the ICA for further proceedings consistent with this opinion.  We otherwise affirm the ICA's judgment on appeal.

| | |
|---|---|
| Patrick K. Wong and Michelle Chi Dickinson (Robert D. Triantos on the briefs) for petitioner | /s/ Mark E. Recktenwald /s/ Paula A. Nakayama /s/ Sabrina S. McKenna |
| Peter Van Name Esser for respondents | /s/ Michael D. Wilson /s/ Todd W. Eddins |

